EDENTON COTTON MILLS v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 8 October, 1919.)

1. **Interstate Commerce—Freight Rates—Illegal Rates—Contracts—Bills of Lading—Knowledge—Representations—Federal Statutes.**

     The intent and purpose of U. S. Compiled Statutes (1916), secs. 8569 and 8574, under the title of "Interstate and Foreign Commerce," is to prevent any discrimination as to interstate freight rates for the transportation of commodities of the same classification among shippers and an agreement for the carrier to receive or the shipper to pay a different or less rate of freight than determined upon by the Interstate Commerce Commission, directly or indirectly, whether existing with or without the knowledge of either or both of the contracting parties at the time, and irrespective of any representations made, is unenforcible and void; and where the shipper has contracted in his bill of lading to pay a less rate than that prescribed by the law, and, relying upon the assurance of the carrier to endeavor to obtain a refund, pays the difference between that and the lawful rate, he may not recover this difference in the courts of our State, the contract sued on being an illegal one as encouraging rebates and unlawful discrimination and not recognizable therein.

2. **Interstate Commerce—Commerce Commission—Rates—Overcharge—Carriers—Agreement—Anticipated Adjudication—Courts.**

     Where the carrier in interstate commerce has failed in its promise to present duly and in proper form the shipper's claim for an alleged over-

charge of freight rate which the latter had paid to the carrier, and thus prevents the shipper from presenting his own claim within the time allowed by the statute, and consequently said commission, having then no authority, refuses to pass upon the matter at all, our courts may not adjudicate the question, the same being for the determination of said commission upon whatever evidence may have been introduced before it, and as its determination thereon, favorable or unfavorable, cannot be anticipated or foreseen, any assessment of damage based upon it would be purely speculative and not allowable.

ACTION tried before *Devin, J.,* at Spring Term, 1919, of CHOWAN.

The action, as it appears from the pleadings, was brought to recover certain alleged freight overcharges for goods shipped by the plaintiff over the lines of defendant and connecting carriers. It turns out that certain freight rates had been established with the sanction of the Interstate Commerce Commission, which afterwards were duly changed and increased in amount, but the parties to this action were not aware of the change at the time that the charges were made against the plaintiff. When the change of rates was discovered the defendant demanded the difference between the rates charged and the amount received under the old tariff and those due under the tariff of rates as amended and increased by the commission. This amount or difference was paid by the ·plaintiff, and it now alleges that the defendant entered into a special agreement with it as follows:

"1. The defendant undertook, promised and agreed, for and on behalf of plaintiff, that it would take charge of, present, and submit the same (that is, its claim for reparation) to the said Corporation Commission in proper form and manner and in due time for adjustment and allowance, and time and again, when this plaintiff would call upon it for settlement, stated to this plaintiff that it was then attending to the matter and would have the same presented in reasonable time; which undertaking, agreement and promise this plaintiff reasonably relied upon.

"2. Notwithstanding the defendant's undertaking, promise and agreement aforesaid, and notwithstanding it had assumed the duty aforesaid to this plaintiff, the defendant neglected and wrongfully failed and refused to do its duty, as it had agreed to do and in justice and right was required to do, until more than two years after the plaintiff had paid the overcharges as demanded by the defendant and had suffered the damage aforesaid, and after all right and power to consider and allow the same were by lapse of time denied the Interstate Commerce Commission under the law.

"3. The claims and demands of the plaintiff aforesaid were, after a lapse of two years from the time the right of demand accrued, presented to the said Interstate Commerce Commission and that commission dis-

allowed the same solely upon the ground that because of the delay aforesaid it was not permitted by law to consider the same.

"4. That but for the promise, undertaking and assurance of the defendant, as hereinbefore set out, and but for the reliance of the plaintiff on the same and its belief that the defendant was performing its duty as it had undertaken to do, this plaintiff would have presented and prosecuted before the Corporation Commission the claim aforesaid, to which there was no defense and about which there was no dispute, and would have recovered the money justly due it.

"5. That by reason of the wrongful and unlawful conduct of the defendant aforesaid, and its failure to perform its duty as hereinbefore set forth, the plaintiff has been damaged in a large sum."

There is a prayer for judgment, the amount claimed being one thousand dollars.

The defendant answered and denied the material allegations as to the contract. It denied that it had overcharged the plaintiff, and averred that the plaintiff had been charged at the established and promulgated rates, and further, that the defendant could not, under the Interstate Commerce Act, have charged any less. That the defendant could not refund any of the sums paid without the same being authorized under the said law.

.The jury found against the defendant as to the contract and its breach, and allowed the amount of the excess over the rates promulgated 20 July, 1911 (the old rates), as damages. Judgment was entered upon the verdict, and defendant appealed.

*J. N. Pruden and Ehringhaus & Small for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

WALKER, J. If we concede that the evidence tends to show a contract as alleged and not a mere gratuitous offer to lend its aid and assistance in obtaining a refund of the difference between the two rates as paid by the plaintiff, and also that the contract if made, as alleged by the plaintiff, was founded upon a sufficient consideration, our opinion is that the plaintiff cannot recover as the contract is illegal, it being contrary to the provisions of the law against rebating or giving undue preferences, privileges or concessions, which is made a misdemeanor by the Interstate Commerce Act, both as to persons and corporations participating in the unlawful act. U. S. Compiled Statutes (1916), Annotated, 8 Vol., title "Interstate and Foreign Commerce," secs. 8569 and 8574, and notes, where many authorities are collected. The language of the act of Congress is very stringent in regard to the duty of the shipper to pay and of the carrier to collect the schedule rates on all shipments

of freight. The cases cited in notes to the sections of the compiled statutes show conclusively that the agreement for a shipment at a rate less than that prescribed cannot be recognized by the courts, and it makes no difference whether the rate has been misquoted to the shipper and received by the agent of the carrier by the mere mistake or the negligence of the latter. The only rate is the true rate as authorized by the commission. It was held in *T. and R. Ry. Co. v. Mfg. Co.*, 202 U. S., 242 (50 L. Ed., p. 1011), that where a carrier has negligently made and quoted to a shipper rates on interstate shipments of coal, upon which he has relied in contracting for, the coal, selling at prices based on such rates, which were lower than the rates which had been duly published, printed and posted as required by the Interstate Commerce Act, and the carrier, as required by the act, collects the prescribed rates, the shipper cannot recover against the carrier for damages occasioned by its misrepresentation of the rates. To the same effect are *Alabama Lumber and Exp. Co. v. Philadelphia, B. and W. R. Co.*, 19 Inters. Com. Rep., 295, and *Texas and P. R. Co. v. Leslie*, 131 S. W., 824, motion for rehearing overruled, 131 S. W., 827. See, also, *Ill., etc., R. R. v. Henderson Elevator Co.*, 226 U. S., 441 (57 L. Ed., at p. 290); *Va.-Caro. Peanut Co. v. R. R.*, 166 N. C., 62. The following cases are to the same effect, as will appear by statement of the substance of each decision: "Acceptance by railroad of charge less than rate filed by mistake, not discovered till after consignee's settlement with his principal, held not to create waiver or estoppel precluding recovery of balance from consignee." *Penn. R. R. v. Titus*, 216 N. Y., 17. "A person dealing with carrier is as effectually bound by the law and orders of the commission, as to both freight and passenger tariffs, as is carrier itself, and neither is estopped to assert the illegality of contract made in violation of act and orders of commission." *Melody v. Great Northern R. R.*, 127 N. W., 543. The same was held in *B. and O., etc., R. R. v. N. A. Box and Basket Co.*, 94 N. E., 906; *La. Rwy. and Nav. Co. v. Holly*, 127 La., 615; *N. Y., etc., R. R. v. York and W. Co.*, 215 Mass., 36. An agreement of a carrier to refund a part of the rates lawfully charged and collected is in violation of the act and unenforceable. *L. and R. Co. v. Coquillard Wagon Works*, 147 Ky., 530. Carrier cannot, directly or indirectly, contract for a rate different from that specified in its schedules. *St. Louis, etc., R. R. v. S. R. Stone Co.*, 154 S. W., 465. A suit by a shipper for a loss of goods on a policy of insurance issued to the carrier, after receipt of the limited value fixed on such goods by the carrier's schedules and bills of lading, was held to be in violation of the act of Congress, amended by the act of 29 June, 1906, as seeking or soliciting a rebate or concession, and not maintainable. *Duplan Silk Co. v. Am. and For. Marine Ins. Co.*, 205 Fed., 724 (124

C. C. A., 18). A carrier may recover from a shipper who has paid the legal rate a refund made to the shipper by carrier's agent, either by mistake of carrier or through agent's illegal act. *Cent. of Ga. R. R. v. Curtis,* 82 S. E. Rep., 318; *L. and N. R. R. v. Allen,* 153 S. W. Rep., 198 (*S. c.,* reaffirmed, 154 S. W., 371); *Ga. R. R. v. Creety,* 63 S. E., 528; *Schenberger v. Union Pac. R. R.,* 84 Kansas, 79. It all comes to this, that the carrier is bound to collect and the shipper to pay the published rates, even though the agent of the carrier has by his conduct caused the shipper to pay a lower rate to his prejudice in fixing the price of his goods, or in any other way. *La. R. and N. Co. v. Holly,* 53 So. Rep., 882; *Baldwin S. and L. Co. v. Columbia S. R. Co.,* 58 Ore., 285; *So. Pac. Co. v. Frye & Bruhn,* 143 Pac. Rep., 163; *Hamlen v. Ill. Cent. R. R.,* 212 Fed. Rep., 324. Ignorance of shipper as to the correct rates will not excuse him, and he should not rely on representations of carrier or his agent as to them. *St. L., etc., R. R. v. Faulkner,* 164 S. W., 763; *Wyrick v. Mo., etc., R. R.,* 74 Mo. App., 406; *Baldwin S. and L. Co. v. Columbia S. R. Co., supra.* Those cases show strictly the courts have required carriers and shippers to live up to the letter of the law enacted by Congress for the purpose of exacting rigid compliance with the main intention, that there should be no favoritism or discrimination and no unfair competition in the form of rebates or by other methods of business. The Interstate Commerce Commission considered a question similar to the one now before us, and through Commissioner Clements it said in *Forster Bros. Co. v. Duluth, etc., R. R.,* 14 Interstate C. C. Reports, at page 236: "It is unfortunate that shippers should be misled to their injury by erroneous information furnished by representatives of carriers as to the rate in effect. It is, of course, the duty of carriers' agents to furnish correct information as to the proper application of the lawful established rates. However, the law requires that tariffs shall be open to public inspection, and therefore shippers are themselves charged with notice of the rate lawfully applicable. The commission cannot consider an erroneous rate quotation made by an agent of a carrier as the basis for an award of reparation to a shipper who thereby suffers damage. Collusion between the carrier and a shipper, which it desired to favor, for protection of other than the tariff rates would be rendered too easy of accomplishment. In such case the carrier could protect any rate which it might desire to apply by simply quoting it to the favored shipper, and thus the integrity of the published tariffs (a strict observance of which is required by law in order to prevent unjust discrimination) would be constantly violated."

This matter has been recently considered by this Court in *R. R. v. Latham,* 176 N. C., 419, where *Justice Hoke,* for the Court, says: "It is clear that defendants are responsible for the amount properly

due for these shipments, both as consignors under the bill of lading presented and under the express agreement that they were to prepay the freight in protection of the designated consignee; and further, that this amount must be determined by the rates of the schedules and tariff established pursuant to law," citing *Tex. Pac. R. R. v. Mugg & Dryden,* 202 U. S., 242; *Central of Ga. R. R. v. Birmingham Sand and Brick Co.,* 9 Ala. App., 419; *Baltimore, etc., R. R. v. New Albany, etc., Basket Co.,* 48 Ind. App., 647; *Holt v. Westcott,* 43 Me., 445; *Ashboro Wheelbarrow Co. v. R. R.,* 149 N. C., 261. *R. R. v. Mugg, supra,* is quoted with approval, where it is said: "A common carrier may exact the regular rates for an interstate shipment, as shown by its printed and published schedule on file with the Interstate Commerce Commission and posted, etc., as required by the Interstate Commerce Act, although a lower rate was quoted by the carrier to the shipper who shipped under the lower rate so quoted." And then the case of *Balto. and Ohio R. R. v. New Albany, etc., Basket Co., supra,* where the Court held:

"(1) One who engaged a railroad company to transport freight in interstate commerce is liable for the established rate on such freight regardless of any contract the shipper may have with the consignee.

"(4) A shipper must take notice of the rates for interstate shipments, and he relies at his peril on the statements of the carrier's agents.

"(5) An interstate carrier is not estopped from recovering the balance due for a shipment by the unauthorized act of its agent in quoting an illegal freight rate."

And, finally, the case of *Cent. of Ga. R. R. v. Birmingham Sand and Brick Co., supra,* where the same rule was thus stated: "Under the Interstate Commerce Act the freight rate of an interstate shipment is not that named in the bill of lading or contract of shipment, but the lawful rate existing at the time, whether or not such rate is known to the consignor or the consignee, and regardless of whether the parties were misled by the carrier as to the lawful rate or whether it had posted the lawful rate as required by the statute; hence the carrier cannot by any act estop itself from demanding the lawful rate. So that the principle is firmly settled that the only rate is the rate fixed by the Interstate Commerce Commission and published, and no contract, agreement or understanding between the parties can change it."

In this case, if recovery by the plaintiff were adjudged, he would be given a rate for the transportation of his goods and wares which would be less than that allowed to other shippers. It is no answer to the assertion to say that plaintiff would merely be recovering damages for a breach of contract and not recovering a favor from the defendant by a reduction of the published rate, contrary to the express provision of the act forbidding any concession, privilege or discrimination. It is

not the manner of showing a favor to the plaintiff so much as the substance of it that we must consider in passing upon the question whether there has been either a direct or indirect violation of the law. If the resultant effect is bad and comes within the prohibition it matters little what particular form it takes. The clear and ultimate result is that plaintiff will have had his goods hauled at a less rate than that which was published at the time the service was rendered. If defendant can be compelled to pay the difference by an action in court, it can pay it just the same without such an action, that is, voluntarily. All it will have to do then, in order to circumvent the act and give the plaintiff what is, in affect, a rebate, is what has been done here, contract to render service in obtaining reparation for the amount paid in excess of the mistakenly supposed rate, and then refuse to perform the contract and instead pay the damages. Such a course would open the door wide for collusion and corrupt bargaining to violate the law, and would therefore be against public policy as declared by the act which seeks to compel equal and impartial service to all alike, and to abolish rebates and discrimination in any and every form as being in violation of the very terms of the act and opposed to the wise policy inaugurated by it, which was so firmly enforced in *Duplan Silk Co. v. Am. and For. Marine Ins. Co., supra.* There the defendant paid the stipulated value of one dollar per pound for the silk carried by it and lost in a marine disaster to one of the carrier's boats. The plaintiff sued on a marine policy, but the court held, as we have shown, that he could not recover as, though the suit was a collateral one, and not against the carrier, it was forbidden by the Interstate Commerce Law, as amended by sec. 6 of the act of 29 June, 1906 (Hepburn Act), 34 Stat., at L. 584, prohibiting the carrier to give, or the shipper to receive or solicit, any rebate or concession for schedule rates, and no question as to the right of the shipper to recover otherwise on the policy was considered, the decision being confined to the single point above stated.

Where a contract for services is made with an illegal design in view, or for enabling the beneficiary to accomplish an unlawful object, no recovery will be allowed upon it. 9 Cyc., 573; Clark on Contracts (2d Ed.), p. 254 *et seq.* The Court said in the *Duplan Silk case, supra:* "The libellant argues that the giving of marine insurance by the railroad company is not a rebate, facility or concession connected with transportation within the meaning of the act. We think this altogether too technical. No one could contend that a carrier which charged its published rate of freight could unlawfully agree in addition to pay the shipper's life insurance or office rent or wages of any of his employees. It is next urged that this insurance was not a discrimination because it was given to all shippers equally. Nevertheless it was a violation of

the act by the carrier, because not stated in its tariff schedules.   Indeed, the express contrary was stated, viz., that the carrier would not assume marine insurance unless it was specifically provided for.   And the libellant, even though not aware of the insurance at the time the goods were shipped, is by this suit violating the act, inasmuch as it is knowingly soliciting a concession by which its shipment was being 'transported at a less rate than that named in the tariffs published and filed by such carrier.'   *American Exp. Co. v. U. S.,* 212 U. S., 522; 53 L. Ed., 635; *Chicago, St. P. M. and O. R. R. v. United States,* 162 Fed., 835, 90 C. C. A., 211.   If the libellant recover in this suit it will get at the expense of the railroad company the full value of its shipment as if it had paid three times first-class freight, when it is only entitled to the agreed value on the freight paid."   It was, therefore, held there that it was a clear case of soliciting for an advantage or favor beyond that allowed to other shippers, and in our case the plaintiff asks to recover on a special contract for the rendering of a service which is not specified in the carrier's schedule of rates, and a service, too, not granted or promised to the other shippers over its line.   By this seeking to gain an advantage over others the plaintiff, by this suit, is, according to the authorities, itself guilty of violating the Interstate Commerce Act.   A similar view was taken by the Circuit Court of Appeals in *Washington, etc., R. R. v. Mobile and O. R. R.,* 255 Fed. Rep., 12, at p. 14, as follows: "Defendants make the proposition that, after having received money in payment of a freight charge the Mobile and Ohio had the right to do with it as it pleased, and the right to give it to the Washington and Choctaw if it so desired.   This proposition cannot receive the sanction of the courts.   It is a mistake to assume that the railroad companies may do as they please with that which they receive.   They are public corporations, charged with public duties, and those duties cannot be performed without a proper conservation and administration of their revenues.   The rate-making bodies of the country must see to it that reasonable rates are fixed, with the view of enabling the companies to perform their public duties.   The proper fixing of rates is inconsistent with an unrestrained right upon the part of the railroad companies to donate or otherwise dispose of their funds, except for the purposes and in the manner contemplated by the laws.   Even if this general proposition could be controverted there could be no question about the duty of railroad companies to conform their interstate transactions to the terms of the Interstate Commerce Act.   Tariffs and divisions would be rendered nugatory if the interested companies could, by repayments and readjustments of accounts, bring about any result they might desire as between themselves and connecting lines or between themselves and shippers.   It is the right and the duty of railroad com-

panies which have improperly paid out money to connecting lines under a mistake of fact, or with knowledge of the unlawful character of payment, to recover such payments. The conclusions reached, and so well stated by the trial judge, are concurred in entirely."

But there is another ground upon which plaintiff's recovery may be defeated. If defendant can be sued upon the alleged contract there is no way of determining with any certainty in law how the Interstate Commerce Commission would have decided the case, if it had been properly constituted before it and diligently prosecuted by the defendant carrier, in behalf of the plaintiff, if such a proceeding would have been permitted by the commission at all. It is a judicial question, and there is no way of foreseeing or foretelling what the decision would have been, or of knowing in advance what would be its conclusion, whether in favor of the shipper or the carrier. It may have ordered reparation to be made, or it may have refused to do so, in the exercise of its own judgment as to the law and merits of the case. There is no possible way, therefore, of telling beforehand whether there would be any order for reparation or for the return of a part of the money paid on the freight charges. It would be highly unseemly for a court to fortell its own opinion of a case and what the decision would be if it were brought before it, and no respectable court would do such a thing, nor should any such wrong be imputed to it. Even if it should do so its opinion could be changed when the facts are developed, at any time before the decision, and it would be its duty to change it. So we are unable to say, in advance of a decision, whether. the plaintiff would sustain any damages. They are, ·therefore, too uncertain and speculative to be safely estimated. *Machine Co. v. Tobacco Co.,* 141 N. C., 284; *Wilkinson v. Dunbar,* 149 N. C., 20; *Hardware ·Co. v. Buggy Co.,* 167 N. C., 423; *Coles v. Lumber Co.,* 150 N. C., 183. We need not decide the question, which has been raised, whether there is any consideration for the contract, apart from its illegal nature and the uncertainty as to any loss from a breach of it.

But the principal ground of decision is that the tendency of such a contract, and its probable if not inevitable effect, would be to violate one of the important provisions of the Interstate Commerce Act, the one against rebates and discrimination among shippers, which was enacted to protect them and the public against such unfair and collusive agreements.

The motion for a nonsuit should have been sustained, and for ·this error we reverse the judgment and order the action to be dismissed.

Reversed.