No. 28,502.

THE KELLOGG HUFF GRAIN COMPANY, *Appellant*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellee*.

(274 Pac. 272.)

Opinion filed February 9, 1929.

*Grant W. Harrington,* of Kansas City, for the appellant.

*Luther Burns, J. E. Dumars,* both of Topeka, *E. S. McAnany, M. L. Alden* and *Thomas M. Van Cleave,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from the judgment of the district court of Wyandotte county dismissing this action, which was one to recover damages for an alleged overcharge on an interstate shipment of grain.

Plaintiff's petition alleged that it was a corporation with headquarters in St. Joseph, Mo., and that it was engaged in the business of shipping and dealing in grain, and that defendant was a common carrier operating a system of railways extending through various states and including the cities and villages of Hebron, Neb., Fairview, Kan., and St. Joseph, Maysville and Raytown, in Missouri.

Plaintiff alleged that St. Joseph is recognized by defendant and other railway carriers as a primary grain market and basing point for the fixing of freight rates on grain shipments which may originate at local points and pass through St. Joseph to final destination. As a basing point in the defendant carrier's freight-rate structure, it was alleged—

"That St. Joseph, Mo., as such basic point is accorded proportional rates on such shipments with the right of diverting or reconsigning said shipments

and with all the privileges incident thereto. That the tariffs of freight charges on grain shipments passing into or through St. Joseph, Mo., adopted and published according to law by the various common carriers desiring to participate in such business, and including the defendant, provide for such proportional rates, transit privileges, privileges of diversion and reconsignment at St. Joseph, Mo."

It was also alleged that defendant's published tariff prescribes a rate of 17 cents per hundredweight for carload shipments of corn originating at Hebron, Neb., passing through St. Joseph, to Raytown, and a rate of 11 cents per hundredweight on carload shipments of corn originating at Fairview, Kan., passing through St. Joseph to Raytown; and that the tariff also provides for transit privileges, diversion and reconsignment of carload shipments of grain at St. Joseph.

Plaintiff further alleged that on March 9, 1925, it held paid freight bills on inbound carload shipments of corn from Hebron and Fairview aggregating 84,000 pounds to St. Joseph, for which upon surrender of such paid freight bills plaintiff was entitled to have 84,000 pounds of bulk corn transported from St. Joseph to Raytown or any station intermediate between St. Joseph and Raytown; and that the stations of Hebron, Neb., Fairview, Kan., and St. Joseph, Maysville and Raytown in Missouri, were all stations upon the line of defendant's railway and that the distance between St. Joseph, Mo., and Maysville, Mo., is a shorter distance than the distance between St. Joseph, Mo., and Raytown, Mo., and that the shorter distance was included within the longer distance and in the same direction.

Plaintiff alleged that on March 9, 1925, in the usual course of business it loaded one of defendant's freight cars with 84,000 pounds of bulk corn for transportation to Maysville, and at the same time it surrendered to defendant paid freight bills on its prior corn shipments from Hebron and Fairview, and defendant shipped, transported and delivered the consignment of March 9 pursuant thereto. But a few days later defendant exacted from plaintiff an additional sum of $19.90 as freight charges on that shipment. Plaintiff alleged that this exaction was arbitrary and illegal and his claim and demand for its repayment were rejected. He therefore prayed judgment for $19.90 and interest and a reasonable attorney's fee.

To this petition defendant filed an answer, traversing plaintiff's allegations of fact and pleading certain affirmative defenses; but

the trial court, apparently on its own motion, held that it had no jurisdiction and dismissed the action. Hence this appeal.

It will be discerned that the plaintiff grain company alleges a cause of action against defendant redressible or justiciable somewhere. Why not in a state court of general jurisdiction? Amid various recitals of plaintiff's petition whose relevancy need not at present concern us, it is alleged in substance that defendant exacted from plaintiff $19.90 more than its own tariff schedules prescribed. The subject matter of an action to recover that sum is one which any court of general jurisdiction is competent to adjudicate if it obtains jurisdiction of the parties.

In the recent case of *Thomas v. Chicago, B. & Q. Rld. Co.*, 127 Kan. 326, 273 Pac. 451, it was said:

"A state court has jurisdiction of an action for damages against a railway carrier for the exaction of a rate in excess of its own official schedules, where the reasonableness of the scheduled freight rate is not assailed and where no question affecting the power or administrative policy of the Interstate Commerce Commission is involved." (Syl. ¶ 4.)

It will be noted that plaintiff's petition makes no complaint of the reasonableness of defendant's scheduled tariff rates for the transportation of this carload of grain; and it does not assail defendant's tariff rules governing proportional rates and privileges of diverting or reconsigning carload shipments of grain through the primary market and basic rate-making point of St. Joseph. On the contrary, plaintiff's action is based upon the alleged exaction of a small sum of money in excess of defendant's published tariff and the denial to plaintiff of the reconsignment privileges·which its tariff professes to extend to grain dealers holding paid inbound freight bills. The allegations of plaintiff's petition may not be true. Defendant's published tariff, fairly construed, may not be susceptible of the interpretation given it by plaintiff. A controversy of that sort presents a justiciable issue of disputed fact—one which a state court of general jurisdiction is fully competent to solve.

In a painstaking brief appellee seeks to uphold the trial court's dismissal of this action by explaining that there is a group of cities on and near the Missouri river known in railroad parlance as group 8, and that the Interstate Commerce Commission has given its sanction to a schedule of freight rates on grain to all the points in this group, and that Raytown, Mo., belongs to that group and that Maysville does not, and in consequence a shipment of grain recon-

signed through St. Joseph to Maysville would not be entitled to the same rate as one to Raytown. That contention may be a good defense in whole or in part to the cause of action alleged by plaintiff. We express no opinion on that point. But it counts for naught on the question whether the district court had jurisdiction. Appellee contends that the state court has no jurisdiction where the controversy is based on a violation of the fourth section of the transportation act. If defendant's officially published tariffs filed with and approved by the Interstate Commerce Commission specified rates in violation of the principles of rate making dictated by section 4 of the transportation act, any grievance of plaintiff suffered thereby would not be justiciable in a state court. Plaintiff's remedy would be through a proceeding before the Interstate Commerce Commission for a rate conforming to section 4 and for an order of reparation for plaintiff's actual damages sustained because of the rate complained of. (*Davis v. Portland Seed Co.*, 264 U. S. 403, 68 L. Ed. 762, and citations.) And if plaintiff were unjustly denied relief by the Interstate Commerce Commission or felt aggrieved at its disposition of his complaint, a state court could give him no redress. The national government could not permit its official commissions and departments to be haled into the state courts of any or all of the forty-eight states of the Union by anybody who could formulate on paper an alleged grievance against their official conduct. Only the federal government's own courts could be given jurisdiction of such a controversy. (*Penna. R. R. v. Puritan Coal Co.*, 237 U. S. 121, 59 L. Ed. 866.) But our time will not permit us to explore the whole range of freight-rate controversies jurisdiction over which necessarily and exclusively is vested in the federal courts. Here all we have is a petty grievance growing out of an alleged overcharge in excess of the authorized and published freight schedules of the defendant carrier. Plaintiff's petition stated a cause of action and the district court of Wyandotte county had jurisdiction to adjudicate it.

The judgment is reversed and the cause remanded for further proceedings.