UNION TRANSFER COMPANY, A CORPORATION, APPELLEE, v. CARL W. RENSTROM AND CATHERINE A. RENSTROM, CO-PARTNERS, DOING BUSINESS AS TIP-TOP PRODUCTS COMPANY, A CO-PARTNERSHIP, APPELLANTS.

37 N. W. 2d 383

Filed May 13, 1949.    No. 32574.

Schall, Robinson, Hruska & Garvey, Gerald M. Vasak, and Charles A. Nye, for appellants.

Jack W. Marer and Norman H. Denenberg, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, a duly authorized motor vehicle common carrier engaged in interstate commerce, brought this action to recover the difference between its duly approved, filed, and published applicable tariff rate and the rate paid by defendants, based upon alleged false descriptions in bills of lading furnished plaintiff by defendants for shipments of steel stampings loose in barrels and transported by plaintiff upon designated occasions from Omaha to St. Paul, Minnesota, and return. The items were concededly described and transported as "unfinished stampings" and if such, concededly carried a rate of 69 cents per 100 pounds, for which shipments defendants paid plaintiff a total of $1,274.31.

However, plaintiff alleged that the items transported were in fact "finished stampings," that is, they were steel "Blanks, Shapes or Stampings of 17 Gauge or thinner," subject to the rating for "Sheet Steel Ware, N. O. I. (not otherwise indexed) * * * Not nested, in barrels, metal baskets, boxes or crates," as provided in plaintiff's tariff, which, if such, concededly required the exaction of a first-class rate of $1.38 per 100 pounds, for which trans-

portation defendant should have paid $2,497.69, or a difference of $1,223.38, with interest at 6 percent from August 25, 1944. Plaintiff prayed judgment for that amount.

Defendants answered, denying generally that the items shipped came within the classification or were subject to the rate claimed by plaintiff. Also, in paragraphs 4 and 5 of defendants' answer, plaintiff's demurrer to which was sustained by the trial court, it was substantially alleged: (4) That plaintiff was estopped to deny that the rate of 69 cents per 100 pounds was correct and estopped from charging or collecting a higher rate because plaintiff quoted, agreed to, and did carry such shipments at the lower rate; and (5) that defendants, relying thereon, shipped the items to a firm in St. Paul, Minnesota, to be galvanized for protection from rust when they could have shipped them and had that done by firms in other cities under a tariff rate approximating 69 cents per 100 pounds. Therefore, defendants prayed that if, under the law, plaintiff was entitled or required to charge a higher rate, then defendants should be entitled to set off against such charges any part thereof exceeding the rate of 69 cents per 100 pounds.

Jury was waived, and upon trial to the court a decree was entered which found generally for plaintiff and against defendants upon the issues presented, and awarded plaintiff a judgment as prayed. Motion for new trial was overruled, and defendants appealed, assigning substantially that: (1) The trial court erred in sustaining plaintiff's demurrer to the 4th and 5th paragraphs of their answer; (2) the judgment was not sustained by the evidence; and (3) the trial court erred in refusing to sustain defendant's motion, made at the conclusion of all the evidence, to dismiss plaintiff's action, because in any event the district court had no jurisdiction of the subject matter, since it was exclusively vested in the Interstate Commerce Commission. We conclude that defendants' contentions should not be sustained.

With reference to the first assignment, it is generally the rule, by virtue of the provisions of the Interstate Commerce Act, and as more particularly applicable here, the Motor Carrier Act of 1935, being part II of the Interstate Commerce Act and cited as Title 49, Chapter 8, sections 301 to 326, inclusive, U. S. C. A., that while a motor vehicle common carrier's duly approved, filed, and published tariff over a stipulated or designated route is in force and effect, the classifications and rates named therein are binding by statute upon both the carrier and shipper. In the light thereof, any statements, agreements, or conduct of the carrier or its agents concerning such classifications and rates or the shipper's ignorance of them will not estop or prevent such carrier from collecting, or relieve the shipper from liability, for the proper published rate of which he is presumed to have knowledge. By analogy, that would also be conversely true, where the shipper sought to recover an overcharge from the carrier.

The reason for the rule is that the rights and duties of the carrier and shipper prescribed by the acts are for the good of the public, to protect it against secret rebates and discriminations, rather than for the enrichment of either the carrier or shipper at the expense of others, and any direct or indirect evasion of such rights and duties by either is expressly prohibited by the acts. Therefore, our conclusion is that the first assignment has no merit. See, 13 C. J. S., Carriers, § 393, p. 873; Artic Roofings v. Travers, 42 Del. 293, 32 A. 2d 559; Western & Atlantic R. R. v. Aiken, 37 Ga. App. 271, 139 S. E. 914; Savannah, Florida & Western Ry. Co. v Bundick, 94 Ga. 775, 21 S. E. 995; Sheldon v. Chicago, B. & Q. R. R. Co., 184 Iowa 865, 169 N. W. 189; Kanotex Refining Co. v. Atchison, T. & S. F. Ry. Co., 142 Kan. 139, 46 P. 2d 16; and Edenton Cotton Mills v. Norfolk Southern R. R. Co., 178 N. C. 212, 100 S. E. 341.

The controlling principles aforesaid are also discussed and applied in cases from this jurisdiction. See, Fremont

Milling Co. v. Chicago & N. W. Ry. Co., 101 Neb. 362, 163 N. W. 331; Brown Consoldiated Milling Co. v. Chicago & N. W. Ry. Co., 101 Neb. 365, 163 N. W. 333; Chicago & N. W. Ry. Co. v. Mallory, 147 Neb. 548, 23 N. W. 2d 735.

The last-cited case is also authority for the applicable rule that: "Where a jury is waived in a law action and the case tried to the court, the court's findings have the effect of a jury's verdict and will not be set aside on appeal unless clearly wrong."

There was primarily no dispute in the evidence upon matters material to the issues. It was stipulated, to wit: That the respective shipments involved were made of the items "designated by the defendants in the Bills of Lading therefor prepared by defendants, as 'Unfinished Stampings'" and that "the defendants paid to the plaintiff for said shipments freight charges at the rate of 'unfinished stampings' being in the total sum of $1274.31." Also, "That the plaintiff did at all times herein mentioned file and maintain on file with the Interstate Commerce Commission, as required by the Motor Carrier Act of 1935, and the rules and regulations of the Interstate Commerce Commission, proper tariffs covering 'finished stampings', the tariff rate therefor being $1.38 per 100 pounds from St. Paul, Minnesota, to Omaha, Nebraska, and from Omaha, Nebraska, to St. Paul, Minnesota, and covering 'unfinished stampings' the tariff rate therefor being 69¢ per 100 pounds from St. Paul, Minnesota to Omaha, Nebraska, and from Omaha, Nebraska to St. Paul, Minnesota."

The primary issue of fact then was simply the nature and character of the items shipped, i. e., were they "unfinished stampings" or "finished stampings." In that connection, defendant Carl W. Renstrom, called as a witness for plaintiff, identified samples like in form to the items shipped loose in barrels. He explained the method of their manufacture from flat steel plates running through a machine, whereby the items were thus stamped, manufactured, or finished in one operation,

except that thereafter they were tumbled in sawdust or other material before shipment, to remove rough edges that might appear thereon, or after being galvanized they were, upon return from St. Paul, so tumbled to clean or polish, and make them more attractive before subsequent assemblage and sale as hair curling devices.

Witnesses engaged in the transportation rate field, who testified for both plaintiff and defendants, identified the items shipped as completed steel stampings, admittedly 17 gauge or thinner, and classified them as "finished stampings" subject to the first-class rate of $1.38 per 100 pounds, as claimed by plaintiff. That conclusion was also supported by other competent evidence. We conclude that the judgment was amply sustained by the evidence.

In the light of the foregoing, the judgment must be affirmed, unless, as contended by defendants, the trial court had no jurisdiction of the subject matter. In giving that question consideration, we conclude that defendants' contention has no merit.

The Interstate Commerce Act, as adopted and thereafter amended from time to time, never purported to exclusively confine the field of jurisdiction to the Interstate Commerce Commission, but as a matter of fact was cumulative and actually reserved to the shipper and carrier all common law and statutory remedies not repugnant to its provisions. Title 49, § 22, U. S. C. A. of the Interstate Commerce Act specifically provides: "and nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies: * * *."

The Motor Carrier Act of 1935 specifically recognized the rights preserved under the foregoing section. In that regard, Title 49, § 317 (b) thereof states: "Provided, That the provisions of sections 1 (7) and 22 of this title shall apply to common carriers by motor vehicles subject to this chapter." The case of Artic Roofings v. Travers,

*supra*, discussed and made obvious the aforesaid objects and purposes of such sections.

It is generally the applicable rule that when the reasonableness, discriminatory character, or validity of approved, filed, and published tariff rates is not assailed, and no question affecting the power or administrative discretion or judgment of the Interstate Commerce Commission already exercised or to be exercised is involved, but the controversy merely involves the question of whether or not the carrier has exacted the rate prescribed in its tariff, courts have jurisdiction of the subject matter. See, 15 C. J. S., Commerce, § 143, p. 519; Great Western Oil Refining & Pipe Line Co. v. Chicago, M. & St. P. Ry. Co., 275 Ill. 56, 113 N. E. 876; Coad v. Chicago, St. P., M. & O. Ry. Co., 171 Iowa 747, 154 N. W. 396; Thomas v. Chicago, B. & Q. R. R. Co., 127 Kan. 326, 273 P. 451, 64 A. L. R. 322; Kellogg Huff Grain Co. v. Chicago, R. I. & P. Ry. Co., 127 Kan. 577, 274 P. 272; Wolverine Brass Works v. Southern Pacific Co., 187 Mich. 393, 153 N. W. 778; Reliance Elevator Co. v. Chicago, M. & St. P. Ry. Co., 139 Minn. 69, 165 N. W. 867; Hardaway v. Southern Ry. Co., 90 S. C. 475, 73 S. E. 1020, Ann. Cas. 1913D 266; Payne v. White House Lumber Co., (Tex. Civ. App.), 231 S. W. 417; American Railway Express Co. v. Price Bros., 54 F. 2d 67; Pennsylvania R. R. Co. v. Fox & London, 93 F. 2d 669, 304 U. S. 566, 58 S. Ct. 949, 82 L. Ed. 1532; Texas & Pacific Ry. Co. v. Sonken-Galamba Corp., 100 F. 2d 158, 306 U. S. 655, 59 S. Ct. 644, 83 L. Ed. 1053; Great Northern Ry. Co. v. Merchants Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943. Cases relied upon by defendants are distinguishable upon the facts, and when read in their true light support plaintiff's contentions.

Generally, words used in rate schedules required to be filed and published, are to be given their commonly understood meaning. American Railway Express Co. v. Price Bros., *supra*. In that respect, the applicable terms of plaintiff's published tariff were clearly unambiguous and without any peculiar trade usage or mean-

ing. Whether the items shipped by defendants were one or the other of two things, both plainly classified under proper tariffs in force and effect as stipulated by the parties, was the issue required to be resolved by the court by reference to the tariffs published, treating and construing them as established law like a statute, and thereafter applying the appropriate rate on the basis of the nature and character of the items at the time of their shipment. In other words, the only factual issue presented was the nature and character of the items shipped, i. e., were they "unfinished stampings" or "finished stampings," in the light of plaintiff's published tariffs. If the former, concededly plaintiff could not recover, but if the latter, concededly plaintiff could recover. Such a case presented factual and legal questions in nowise different from any other factual or legal issue determinable by courts and juries, and courts have original jurisdiction to try such cases.

We conclude that the district court did have jurisdiction of the subject matter; that the trial court did not err in sustaining plaintiff's demurrer to paragraphs 4 and 5 of defendant's answer; and that the judgment was amply sustained by the evidence. Therefore, the judgment should be and hereby is affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.