# EDWIN F. JOHNSTON v. L. B. HARTZ STORES, INC.[1]

February 4, 1938.

No. 31,514.

*Paul A. Lundgren, Lincoln Arnold,* and *W. E. Rowe,* for appellant.

*H. O. Chommie* and *George L. Bargen,* for respondent.

*William S. Ervin,* Attorney General, *Harry W. Oehler,* Assistant Attorney General, and *Ralph L. Norgaard,* Special Counsel, *amici curiae,* filed a brief on behalf of the Railroad and Warehouse Commission.

*Stinchfield, Mackall, Crounse, McNally & Moore, Perry R. Moore,* and *Clyde W. Fiddes, amici curiae,* filed a brief on behalf of Regulated Motor Transportation Association of Minnesota, Inc.

LORING, JUSTICE.

This case comes here on an appeal from an order overruling a demurrer to the amended answer to the first of four causes of action

[1]Reported in 277 N. W. 414.

stated in the complaint. This first cause of action sought a recovery of approximately $19,000, the difference between what the plaintiff had been paid as a contract carrier for transporting goods in this state for the defendant and the minimum rate for such transportation as fixed by the railroad and warehouse commission pursuant to the powers conferred upon it by L. 1933, c. 170, 3 Mason Minn. St. 1936 Supp. §§ 5015-20 to 5015-44. As a defense to this cause of action defendant set up a contract with the plaintiff at rates less than those prescribed by the commission and which resulted in a total charge of $26,116.51, all of which had been paid. Transportation was alleged to have been performed between July 1, 1933, and April 26, 1936. Plaintiff obtained from the railroad and warehouse commission a permit as a contract carrier under the provisions of L. 1933, c. 170. This permit was renewed for the subsequent years up to and including 1936. Under these permits he furnished the transportation here involved but did not conform to the rules of the commission requiring the filing of reports or the use of bills of lading.

It is conceded that this contract was illegal as in contravention of c. 170. The defendant contends that in consequence of this illegality the parties to the contract are *in pari delicto* and that consequently the courts will leave the parties where they find themselves.

L. 1933, c. 170, § 8, provides:

"No contract carrier shall charge, demand, collect, or receive, nor shall a shipper pay, a less compensation for the transportation of property, or for any service in connection therewith, than the minimum rates and charges fixed by the commission; * * *"

·Chapter 170 is an act providing for "the supervision and regulation of the transportation of property by motor vehicle on the highways of this state by contract carriers and common carriers not operating over a regular route; for the safe operation of such motor vehicle and for the protection of the highways; subjecting such transportation to the jurisdiction and control of the Railroad and Warehouse Commission; * * *"

134

Since the decision of the United States Supreme Court in Stephenson v. Binford, 287 U. S. 251, 53 S. Ct. 181, 77 L. ed. 288, 87 A. L. R. 721, there can be no doubt that the state may fix minimum rates for contract carriers by motor vehicle by virtue of its power to conserve the highways and make them safe for public travel. North Shore F. & F. Co. v. North Shore B. M. T. Assn. 195 Minn. 336, 263 N. W. 98; Public Service Comm. v. Grimshaw, 49 Wyo. 158, 53 P. (2d) 1, 109 A. L. R. 534, 561, note.

The sole question is whether or not the plaintiff may recover the undercharge from the shipper. Subdivision (a) of § 2 of c. 170 provides that the minimum rate fixed by the commission shall not be "less than the reasonable cost of the service rendered for such transportation, including a reasonable return on the money invested in the business and an adequate sum for maintenance and depreciation of the property used." As this requirement is related to the use of the highways, it is quite obviously the legislative purpose that the rates should be adequate to permit the contract carrier to keep his equipment in safe condition so as not to be a menace to the safety of other traffic. It may also have been the legislative purpose to prevent the subjection of the public highways to an excessive burden due to the cutting of rates, which in turn might prevent the carrier from keeping his equipment in proper condition and which might also subject the highway itself to the burden of the carriage of property which would otherwise naturally seek transportation by rail.

Will it effectuate the purposes of the act to treat the contract as an ordinary illegal contract, where the courts normally leave the parties where they find themselves, or is the public policy behind the enforcement of the act paramount to the public policy usually applied to ordinary illegal contracts? Is it necessary that in order to effectuate the purposes of the act we must permit a recovery of the undercharge? What was the legislative intent?

The subject matter of the agreement insofar as it relates to the transportation of property is a perfectly legitimate subject of contract. It is only the agreement to carry at a lesser rate than the minimum prescribed by the commission that constitutes the illegal

feature. There is no specific provision in c. 170 that a carrier may recover such an undercharge, but we are asked to imply that right from the language of § 8 and the general purpose of the act as announced by the legislature.

Under the interstate commerce act, common carriers are permitted to recover undercharges, although the language of that act is not quite so strong as is § 8 of c. 170, and although there is no specific provision for the recovery of undercharges. See 49 USCA, 283, c. 1, § 6, par. (7). It is quite true that the purposes underlying the regulation of common carriers are primarily the establishment of reasonable rates and the prevention of discrimination, but in order to effectuate such purposes it becomes necessary to render contracts for any other rate nugatory and to treat the contract for carriage as one for the established rate and permit a recovery for an undercharge. Obviously the permitting of such a recovery is a much more effective way of enforcing the law than any other could possibly be. The same is true of the contract carrier act. Fines and penalties might be imposed, but the pressure of the shippers upon the carriers for reduced rates in violation of the statute will almost entirely be relieved if the shippers know that notwithstanding any illegal bargain that is made recovery may still be had on the basis of the minimum rate fixed by the commission. Collusion between the carrier and the shipper to circumvent the law, which would otherwise be easy of accomplishment, will be practically eliminated. All these considerations apply with equal force to the maintenance of the contract carrier rates fixed by the commission. The conservation of the highway and the safety of the public are just as dependent upon the maintenance of the contract carrier rates as the objects sought by the common carrier acts are dependent upon the maintenance of the rates fixed by the commission. In our opinion, the public welfare calls more imperatively for the enforcement of the former than the latter. It is paramount to any public policy which may be invoked to leave the parties where they find themselves. In our opinion, the minimum rates fixed by statute should be read into the contract as binding upon defendant, and there can be no estoppel by virtue of the agreement to take the

136

illegal rate. City of St. Paul v. Minnesota Transfer Ry. Co. 155 Minn. 237, 240, 193 N. W. 175. The right of private contract at a lower rate has been taken from both the shipper and the carrier and the minimum rate substituted therefor. Such, in our opinion, was the legislative intent. That plaintiff did not comply with the rules of the commission requiring the filing of reports and the use of bills of lading is no defense, for the same reasons of public policy.

The order overruling the demurrer must be reversed.

So ordered.