# G. L. HAWLEY AND ANOTHER, *d. b. a.* HAWLEY AND SON, v. LITTLE FALLS MILL AND MERCANTILE COMPANY.[1]

June 8, 1945.

No. 33,996.

[1]Reported in 19 N. W. (2d) 161.

166

*Charles A. Fortier,* for appellant.

*Fred F. Weddel,* for respondents.

THOMAS GALLAGHER, JUSTICE.

On May 9, 1942, plaintiffs, duly licensed contract carriers, brought action against defendant for $2,068.96 claimed as a balance due for transporting defendant's merchandise between January 12, 1934, and March 28, 1937. Plaintiffs alleged that between the aforesaid dates defendant sold goods to them and that there existed during all such period an open and current account between the parties, the last item of which was furnished March 28, 1937.

Defendant denied the account was open and current and alleged that any charges for services furnished by plaintiffs prior to May 9, 1936, were barred by the statute of limitations. Plaintiffs' motion to strike defendant's answer as sham and frivolous was granted on October 27, 1944, and this appeal is from the order made to such effect at that time.

Between January 12, 1934, and March 28, 1937, plaintiffs hauled certain goods and merchandise of defendant. Within this same period plaintiffs purchased various supplies from defendant. It was agreed between the parties that the freight shipments should be based upon specified railroad carload rates which were less than the rates ordered by the state railroad and warehouse commission; that the accounts between the parties were to be balanced, adjusted, and paid at the end of each month; and that a new account was to be started for each month succeeeding such settlement. This agreement was carried out and payments made thereunder at the end

of each month at the agreed rate until March 28, 1937, when the parties ceased dealing with each other. Since the freight rates charged were less than those authorized by the railroad and warehouse commission, although the parties settled with each other on the basis of their agreement each month, a balance in fact legally remained due plaintiffs from defendant after each month's settlement.

The trial court held that, notwithstanding the agreement between the parties, the law required collection of the legal rate; that in consequence the parties did not strike a correct balance each month, but that in fact there remained due plaintiffs at the end of each monthly period the difference between the rate charged and the rate authorized by the railroad and warehouse commission. The court further held that because such unpaid balances existed each month the accounts did not close or terminate at the end of each month, but, on the contrary, became open, current, and continuous until March 31, 1937, the date of the last payment thereon. On this theory, the court held that the account matured on March 31, 1937, and hence was not barred by the statute of limitations at the time this action was commenced. Defendant complains of that portion of the order holding that the unpaid balances due plaintiffs each month resulted in the account between the parties becoming open and current, contrary to their agreement.

■ Minn. St. 1941, § 541.05 (Mason St. 1927, § 9191), provides that actions upon contracts or other obligations, express or implied, shall be commenced within six years from the maturity thereof. Section 541.10 (§ 9197) provides:

"If the action be to recover a balance due upon a mutual, open, and current account, and there have been reciprocal demands between the parties, the limitation shall begin to run from the date of the last item proved on either side."

■ The question here is whether the account was a mutual, open, and current account, or whether each month's transactions terminated at the end of such month upon settlement between the

parties. In order that an account be regarded as open or current, it must appear by agreement of the parties, express or implied, that all the items thereof are to constitute one demand. 34 Am. Jur., Limitation of Actions, § 96. In other words, there must be an express or implied agreement between the parties that the account existing between them is to be mutual, open, and current before it may be so construed. If the items of the account are to be considered separately and settled on a separate monthly basis without regard to what may follow in the succeeding month, then the court may not read into such an agreement a condition providing that the account shall constitute an open and current one, regardless of the intention of the parties. 1 Am. Jur., Accounts and Accounting, § 3.

■ The law is well established that a contract carrier may bring action against a shipper to recover full freight charges as fixed by the state railroad and warehouse commission, notwithstanding an agreement between them to transport merchandise at a lower rate. While the carrier is equally guilty with the shipper in attempting to evade the law, nevertheless the carrier may recover any balance due, in accordance with the established rates. This is to deter and discourage agreements to carry freight at less than the lawful rates. Under such circumstances, as this court held in Johnston v. L. B. Hartz Stores, Inc. 202 Minn. 132, 277 N. W. 414, the contract between the carrier and the shipper becomes one for the minimum rate authorized by the commission, notwithstanding the agreement to the contrary. While ordinarily parties to an illegal agreement are left where the court finds them and neither may recover from the other for violation of rights under such agreement, where freight rates are involved, since the public and other shippers are also concerned with enforcement of the law, the courts have permitted the carrier to recover the full rate, even though he be equally guilty with the shipper. As stated in the Johnston case (202 Minn. 134, 277 N. W. 416):

"Will it effectuate the purposes of the act to treat the contract as an ordinary illegal contract, where the courts normally leave the parties where they find themselves, or is the public policy behind the enforcement of the act paramount to the public policy usually applied to ordinary illegal contracts? * * *

"* * * There is no specific provision in c. 170 that a carrier may recover such an undercharge, but we are asked to imply that right from the language of § 8 and the general purpose of the act as announced by the legislature.

"* * * Obviously the permitting of such a recovery is a much more effective way of enforcing the law than any other could possibly be. The same is true of the contract carrier act. Fines and penalties might be imposed, but the pressure of the shippers upon the carriers for reduced rates in violation of the statute will almost entirely be relieved if the shippers know that notwithstanding any illegal bargain that is made recovery may still be had on the basis of the minimum rate fixed by the commission. * * * It [the right to collect the authorized rates] is paramount to any public policy which may be invoked to leave the parties where they find themselves."

■ While the foregoing authorities establish the carrier's right to recover from the shipper for the full authorized rate, there is nothing in the language of such authorities which holds that such a carrier may bring action for the full established rates after the expiration of the statutory period for the bringing of actions, nor can the language thereof be construed as authorizing the changing of accounts which were agreed to be on a monthly basis to open and current accounts, thereby preventing the operation of the statute of limitations thereon. Here, the court in substance changed the agreement intended by the parties, which provided that the accounts between them should be settled monthly, and rewrote the contract so that the additional legal liability of defendant each month in effect changed the account to an open and current one. We feel that the authorities do not justify such a result.

While plaintiffs had the right to sue at the end of each month for the difference between the rate charged and the lawful rate, such right of action matured at the end of each month, when the full charge became due, and plaintiffs' rights of action on the claims expired six years from that date. The liability thus imposed was in addition to that agreed upon between the parties. Against it the statute of limitations operated the same as it would against any other debt or obligation arising out of a contract, and plaintiffs' failure to bring action on the claims within six years after their maturity effectively barred them thereafter.

The order appealed from is reversed with directions to proceed in accordance herewith.

