HEUER TRUCK LINES, Plaintiff, Appellee, v. ROBERT W. BROWN-
LEE et al., Defendants, Appellants.

No. 47100.

(Reported in 31 N. W. 2d 375)

MARCH 9, 1948.

Boardman, Cartwright & Druker, of Marshalltown, for defendants, appellants.

Haupert & Robertson, of Marshalltown, for plaintiff, appellee.

HALE, J.—The facts are substantially without dispute. Plaintiff, a corporation, has long been a truck operator, organized by the father of Stanton Heuer and Forrest Heuer, the present operators. The principal place of business is in Marshalltown, Iowa. Defendants operate a Coca Cola bottling plant in the same town and have a warehouse at Ames, from which customers in the Ames territory are served.

Both Stanton and Forrest were drafted into the service; Stanton in 1942, and Forrest early in 1943, and a substitute manager employed. This manager arranged for the Heuer Truck

Lines to haul Coca Cola at four cents a case from Marshalltown, Iowa to Ames, Iowa, and return empty cases without charge. Stanton Heuer, on his discharge from service, again managed the business and asked the Coca Cola company for the hauling. Arrangements were made between Stanton and Edward White, manager for the Coca Cola company, to again haul the product at the rate arranged by the substitute manager. Later, Stanton Heuer discovered that this rate did not conform with the filed tariff rate and demanded of the Coca Cola company the difference between the rate charged and the higher tariff charge. This was refused and suit brought. On trial the court found for the plaintiff.

Among other findings of fact the district court found that plaintiff was duly licensed, had filed with the Iowa Commerce Commission prior to the time of hauling, a schedule of rates fixing the charges to be made for hauling merchandise; that the hauling under agreement began in May 1943, and continued to and including January 1944; that the hauling began again on September 28, 1944, and continued to and including October 31, 1944; that (as stipulated) during the periods May 25, 1943 to January 4, 1944, and September 28 to October 31, 1944, the plaintiff hauled to Ames the Coca Cola indicated in seventy-four freight bills filed, and forty-six freight bills showed the empty cases and shells transported from Ames to Marshalltown; and that payment was made at the rate above mentioned by the defendants to the plaintiff, and also $287 for labor under the oral arrangement. The weight of the cargo and the distance from Marshalltown were also stipulated.

The court found, as a conclusion of law, that the plaintiff was a common carrier and was making the haul for the Marshalltown Coca Cola Bottling Company as a common carrier. The court further found that plaintiff was required to make the charges in accordance with the rates on file with the commerce commission at the time of the hauling; that any agreement to make a lesser charge or to make no charge would be unlawful and void; that defendants had knowledge, either actual or constructive, of the rates on file with the commerce commission and any agreement with the plaintiff in violation of the plaintiff's schedules would constitute a preference to the defendants and

unlawful discrimination against others; that the plaintiff cannot be prevented by estoppel, or otherwise, from collecting the lawful rate according to the schedules properly filed with the Iowa State Commerce Commission under the provisions of chapter 327 of the Iowa Code of 1946. The court found for the plaintiff the difference between the price paid and the scheduled price.

The defendants filed various requests for enlargement of the court's findings, which were refused, except that the court, to clarify his findings, set out that there was a second oral contract made between plaintiff and defendants; that plaintiff was a common carrier and that there was no evidence of the commingling of merchandise of the defendants and others.

I. Defendants' first contention is that error was committed by the court in holding that the hauling of Coca Cola from Marshalltown to Ames, and returning the empties, was a common carrier operation. This is the principal issue in the case. Defendants do not seriously contend that the plaintiff was not a common carrier, and could not well do so. The evidence shows that plaintiff had appointed one J. M. Brockway as an attorney in fact in the adoption of the scheduled rates filed with the Iowa State Commerce Commission, as provided by law and published by the Iowa State Commerce Commission; that plaintiff had held itself out to the public generally as such carrier. But defendants allege that in the particular services involved in this action plaintiff was working under a contract, and as such was a contract carrier. Defendants allege that the operation was separate and distinct from the plaintiff's common carrier operations, and that as such a separate contract operation the plaintiff was not governed by any tariffs filed in the office of the Iowa State Commerce Commission. Defendants admit that a common carrier cannot use a contract as a subterfuge for the purpose of violating its duties as a common carrier, and that a common carrier cannot indulge in common carrier and contract operations at the same time. There can be little doubt that a common carrier could enter into a contract operation, but the authorities cited by the defendants do not support their argument. They cite 13 C. J. S., Carriers, section 5, which holds:

"A common carrier may, under some circumstances, act as a private carrier, and when, as a matter of accommodation or special engagement, a common carrier undertakes to carry something which it is not his business to carry, he becomes a private carrier, pro hac vice. A common carrier cannot, however, avoid the duties required of him as such carrier, by insisting on a special or private contract with the shipper. It has also been held that, while the same person may be engaged in one line of business as a common carrier and in another line of business as a private carrier, the same facilities cannot be used at the same time in both common carrier and private carrier transportation."

But under the evidence in this case, as a common carrier it was plaintiff's duty to carry merchandise of any kind except livestock, either in interstate or intrastate commerce. As such carrier it would be required to extend its facilities to any person demanding its services. It would be bound by the obligations attendant upon a common carrier. The contract or arrangement between plaintiff and defendants was about the same as, or did not involve deviation from, the service that would be extended to all its customers. Such service being open to the use of all members of the public, the public would have the right to require its service to the extent of the capacity of the plaintiff. The mere fact that plaintiff, through error, granted a lower rate to a shipper than the scheduled rate, did not change its duties as a carrier for the public generally so as to make it a private or contract carrier. See 13 C. J. S., Carriers, section 4; 9 Am. Jur., Carriers, sections 4, 37.

The definition of a private carrier as given in 13 C. J. S., Carriers, section 4, is:

"* * * one who, without making it a vocation, or holding himself out to the public as ready to act for all who desire his services, undertakes, by special agreement in a particular instance only, to transport property from one place to another either gratuitously or for hire. He carries only for persons with whom he has an initial contract, and assumes no obligation to carry for others * * *."

We think there can be no doubt here that the plaintiff in undertaking to carry the goods of the defendants did not depart from its character as a common carrier; that the form of work and the manner of performing the service was in line with its ordinary vocation as such carrier; that in the time or manner of transporting the goods there was no distinction, except as to rate, between the service performed and that which it ordinarily performed as a carrier of goods for other customers. We are satisfied that the evidence so shows, and that the arrangement was that of a common carrier, and therefore the hauling was a common carrier operation subject to all the rules and regulations pertaining to common carriers.

II. The defendants argue that the court erred in holding that the plaintiff was required to make charges for the hauling of Coca Cola from Marshalltown to Ames, and the returning of empties according to the rates and schedules on file with the commerce commission at the time of the haul. Defendants cite section 327.2 of the 1946 Code. So far as is material here the section provides that:

"The commission is hereby vested with power and authority and it shall be its duty to:

"1. Fix or approve the rates, charges, classifications, and rules and regulations pertaining thereto, of each truck operator, after complaint has been filed in accordance with rules established by the commission."

If defendants' argument were valid, that is, if no jurisdiction were acquired over the rates until complaint had been filed, the commission would be shorn of one of the most important reasons for its existence. We do not believe that the legislature so intended, or that the commission's jurisdiction is limited to section 327.2, Code, 1946. The reason for the requirements as to charges is to prevent favoritism among shippers, by the giving of preferences or in other ways. The control of motor carriers or common carriers of the state is designed to prevent just such preferences, not only for the protection of the shipper, but of carrier. Where a controversy does arise this section applies, but the power of the commission is provided for

in another section to which reference is made. Section 327.4, Code, 1946, recites that:

"All control, power, and authority over railroads and railroad companies, motor vehicles and motor carriers now vested in the commission, insofar as the same are applicable, are hereby specifically extended to include truck operators."

It is provided in chapter 325, Code, 1946, section 325.2, which chapter relates to Motor Vehicle Certificated Carriers, that:

"The commission is hereby vested with power and authority, and it shall be its duty to:
"1. Fix or approve the rates, fares, charges, classifications, and rules and regulations pertaining thereto, of each motor carrier."

The section has other provisions as to the powers, but if by section 325.2 the rates may be fixed, then section 327.4, which grants to the commission "all control, power, and authority" by extension to include truck operators, carries with it the powers elsewhere granted as to motor carriers. In other words, the motor operator is under the same control as other carriers provided for in section 325.2. A difference between the two classes provided for in sections 325.2 and 327.4 is apparent in the definition. The former, Motor Vehicle Certificated Carriers, operate between fixed termini or over a regular route, while chapter 327, the Motor Vehicle Truck Operators, applies to vehicles not operating between fixed termini, or over a regular route, but the rules, so far as rates are concerned, are applicable alike to both.

The commission has provided rules which are applicable to truck operators, providing for a regular schedule of tariff rates which are issued to persons interested therein. The commission has authority and jurisdiction as to such rates.

III. Defendants argue that the court was in error in holding that the agreement for hauling the merchandise in question and the returning of empties constituted a preference to the defendants and unlawful discrimination against others, and the reason assigned for such argument is that there is no evi-

dence of preference or discrimination—arguing that a conception of discrimination reasonably involves at least two instances of shipment, one of which, in the matter of rates, has fared better than the other, though both by reason of their similitude should have fared alike. We cannot agree with this argument. Defendants cite, as supporting their theory, United States v. Hanley, D. C., Ill., 71 F. 672, a criminal case and under criminal rules as to indictment. See 13 C. J. S., Carriers, section 522b. Both parties also cite United States v. Union Stock Yard & Transit Co., 226 U. S. 286, 307, 33 S. Ct. 83, 89, 57 L. Ed. 226, 234, an injunction case, holding void a contract showing discrimination.

In the case at bar it was unnecessary to show that any particular shipper was discriminated against. The fact of the granting of a rate less than the tariff rate was a discrimination against all shippers and the public generally, who had notice through the filing of the tariff, of the rates they would be expected to pay. We think there can be no doubt that this alleged contract in this case is a discrimination against the public and other shippers of like commodities. Such a contract is void. Northern Gravel Co. v. Muscatine N. & S. Ry. Co., 185 Iowa 1259, 1266, 171 N. W. 787.

▌ IV. The court found that the doctrine of estoppel could not be invoked against the plaintiff as urged by the defendants. If there was an agreement between defendants and plaintiff, in order that the plaintiff be estopped, such agreement must necessarily be valid and enforceable. There was no such enforceable contract here, since it was contrary to the rates adopted and contrary to the rule that there should be no discrimination in favor of one, or preferential treatment. We agree with the court that there was no estoppel. 31 C. J. S., Estoppel, section 110a; Langan & Noble v. Sankey, 55 Iowa 52, 7 N. W. 393; Johnson County Sav. Bk. v. City of Creston, 212 Iowa 929, 231 N. W. 705, 237 N. W. 507, 84 A. L. R. 926, and cases cited.

▌ V. Other questions were raised by defendants which we find it unnecessary to discuss at any length. These rates were fully identified by a member of the rate department of the commission. They were published for general distribution; and the court properly admitted them. The court also properly

admitted a copy of the Iowa State Commerce Commission rules and regulations relating to truck operators, which were authorized by statute and adopted. We find no error in the court's ruling. See State ex rel. Bierring v. Swearingen, 237 Iowa 1031, 1041, 22 N. W. 2d 809, 814.

Plaintiff was a common carrier of freight of certain classes. The alleged contract, being contrary to the established rate, was void, and we find that the plaintiff was properly entitled to recover the balance of the published rate.

The ruling of the district court should be and is affirmed.— Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, GARFIELD, MANTZ, SMITH, and HAYS, JJ., concur.