**CENTRAL DISTRIBUTION CARRIERS, INC., Appellant,**

v.

**MRS. GERRY'S KITCHEN, INC., Respondent.**

**No. C5–94–831.**

Court of Appeals of Minnesota.

Sept. 20, 1994.

Paul O. Taylor, St. Paul, for appellant.

Donald W. Savelkoul, Albert Lea, for respondent.

Considered and decided by HUSPENI, P.J., and LANSING and PETERSON, JJ.

## OPINION

LANSING, Judge.

A defunct motor carrier seeks to collect undercharges from a shipper after accepting as payment in full for seven years contractual rates below the filed rates. The district court ruled that the motor carrier's recovery was barred by equitable estoppel, and we affirm.

## FACTS

Central Distribution Carriers, Inc. (carrier) is a Minnesota corporation that held a freight hauling permit issued by the Minnesota Department of Transportation (MnDOT) from 1983 until December 6, 1991, when the permit was revoked. Mrs. Gerry's Kitchen, Inc. (shipper) is a Minnesota corporation which makes salad products and distributes them in a five-state region. The carrier and the shipper entered a contractual relationship in November 1984, after the carrier approached the shipper with price quotes for an exclusive shipping arrangement. The rates were later confirmed in writing.

The contract rates were similar to quotes received by the shipper from other motor carriers, and represented the typical rates charged for hauling the same type of freight over the same distance to the same destinations. As set out in the stipulated facts, the shipper reasonably believed that the quoted

rates were legal and enforceable. In addition, representations made by agents of the carrier reinforced the shipper's belief that the parties were operating under legally filed and enforceable carrier rates.

From 1984 until 1991, the shipper paid these rates to the carrier in full and on time. Unknown to the shipper, the carrier filed freight rates with MnDOT that were two to three times higher than the total contracted rates of $14,583.74.

The carrier brought suit in district court asserting its right to collect undercharges. The carrier seeks damages equal to the difference between the filed rates and the contracted rates, along with prejudgment interest.

## ISSUE

Did the district court err in granting equitable relief in an action to enforce filed rates?

## ANALYSIS

In Minnesota, permit carriers are "permitted" to collect only those rates filed with MnDOT. *See* Minn.Stat. § 221.171 (1992). Early legislation imposing rate regulation did not address a carrier's right to recover undercharges, but in 1938 the Minnesota Supreme Court implied a private cause of action to collect the filed rates. *See Johnston v. L.B. Hartz Stores, Inc.*, 202 Minn. 132, 135–36, 277 N.W. 414, 416 (Minn.1938). The United States Supreme Court has also recognized a federal filed rate doctrine. *See Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907); *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981).

In 1957 the Minnesota Legislature amended the motor carrier regulatory statute to specifically allow interested persons, in addition to the commissioner, to bring an action to enforce chapter 221. *See* 1957 Minn.Laws Ex.Sess. ch. 17, § 26. Currently, Minn.Stat. § 221.261 provides in relevant part:

> An action * * * may be instituted, upon verified complaint of the commissioner or any interested person in any district court of any county wherein a motor carrier has a principal office or into which its route extends, for the enforcement of any provision of this chapter, * * * and the court may grant provisional or other relief, ordinary or extraordinary, legal or equitable, which the nature of the case may require * * *.

Minn.Stat. § 221.261 (1992).

The 1957 amendment expanded the statute to provide specifically for a private action to enforce the regulatory statute. That same amendment allowed the courts to apply legal or equitable relief as required by the nature of the case. The plain language of Minn.Stat. § 221.261 thus creates a private cause of action in which district courts may apply equitable doctrines to enforce the provisions of the statute. *See Tuma v. Commissioner of Economic Sec.*, 386 N.W.2d 702, 706 (Minn.1986) (courts must give clear and unambiguous statutes their plain meaning).

The unusual language of Minn.Stat. § 221.261 arguably goes beyond the general procedural grant of common law equitable power to create a substantive statutory power that may apply even when common law doctrines of equity do not. The language appears to be unique in Minnesota regulatory law and apparently has been included only in the statutes regulating motor carriers (ch. 221) and railroads (ch. 218).[1] But whether the 1957 statute only incorporates preexisting equitable rights as a part of the available enforcement procedure or creates a particular substantive right to vary the enforcement of the statute, the district court acted within its statutory power in applying equity.

The carrier requests that we interpret *Hartz Stores* as a bar to the district court's application of its equitable powers in deciding the action. We reject this interpretation because the underlying factual circumstances distinguish *Hartz Stores* from the case at

---

1. Minn.Stat. § 218.031, subd. 6 (1992).

hand. In *Hartz Stores,* the shipper, rather than the carrier, set up the illegal contract. In its defense it argued that the court should void the contract because the parties were equally at fault. In balancing its common law equitable power of voiding the contract with its legal power of reading the statutorily-established rates to replace the contract rates, the 1938 supreme court concluded that public policy would be better served by preventing the shipper who had "pressured" the carrier into the illegal contract from being unjustly enriched by avoiding the minimum rates. *Hartz Stores,* 202 Minn. 132, 135, 277 N.W. 414, 416 (Minn.1938). The court further concluded that reading filed rates into contracts would discourage the creation of below-minimum rate contracts. *Id.*

The relationship between the shipper and the carrier in the current action is significantly different. The stipulated facts show that the carrier approached the shipper with quoted rates similar to other quoted prices received by the shipper and that agents of the carrier made representations that reinforced the shipper's belief that the rates were legally filed and enforceable. The facts further indicate that the shipper relied upon the rates in good faith, having paid its bills on time and in full. And, as the stipulation points out, after the carrier filed higher freight rates with MnDOT, it continued to accept the quoted rate as payment in full.

■ The doctrine of equitable estoppel is intended to prevent a party from taking unconscionable advantage of its own wrong by asserting its strict legal rights. *Northern Petrochemical Co. v. U.S. Fire Ins. Co.,* 277 N.W.2d 408, 410 (Minn.1979). Estoppel requires that the moving party prove that (1) a party made representations; (2) another party reasonably relied on these representations; and (3) the relying party will be harmed if estoppel is not invoked. *Hydra–Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 919 (Minn.1990) (citing *Northern Petrochemical Co.,* 277 N.W.2d at 410). The district court did not err in refusing to assist the carrier in collecting rates under Minn.Stat.

§ 221.171 because it balanced the equitable equation and concluded that the carrier's wrongdoing should bar it from collecting the higher filed rates.

■ We recognize that in some circumstances the exercise of section 221.261 powers could conflict with administrative ratemaking and enforcement powers, but the facts of this case do not present such a conflict. The record does not indicate that the shipper knowingly attempted to circumvent the filed rates. In fact, the record shows that the shipper did not know of the higher filed rates until a collection agency for the defunct company instituted this undercharge action to collect the difference.

■ We also recognize that courts generally do not rule on issues that require the "exercise of administrative discretion" but instead refer these issues to the appropriate regulatory bodies for initial determination to preserve "uniformity and consistency" in regulation. *City of Rochester v. People's Coop. Power Ass'n, Inc.,* 483 N.W.2d 477, 480 (Minn.1992) (quoting *State, Pollution Control Agency v. U.S. Steel Corp.,* 307 Minn. 374, 380, 240 N.W.2d 316, 319–20 (Minn.1976)). *See also Texas & Pacific Ry. Co.,* 204 U.S. at 448, 27 S.Ct. at 358 (referral to ICC on reasonableness of railroad rates preserves uniformity of regulatory scheme); *Arkansas La. Gas Co.,* 453 U.S. at 577, 101 S.Ct. at 2930 (court cannot usurp regulatory function in setting natural gas rates).

■ But if the issue raised before the court is "inherently judicial" and does not require the exercise of administrative discretion, the doctrine of primary jurisdiction does not limit the court's power to act. *Brevik v. Kite Painting, Inc.,* 416 N.W.2d 714, 719 (Minn.1987). Common law remedies can co-exist with statutory administrative remedies when the two are not in "irreconcilable conflict." *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 299–300, 96 S.Ct. 1978, 1984–85, 48 L.Ed.2d 643 (1976). At the time the carrier filed suit to collect the higher rates and the shipper became aware of the filed tariffs,

MnDOT had already revoked the carrier's permit and the company was defunct. The statutory remedies, consisting of review of the rate's reasonableness, issuance of cease and desist orders, and levy of penalties, were no longer available to the parties and thus are not in conflict with the district court's exercise of primary jurisdiction.

The shipper alternatively contends that the carrier's illegal stock transfer under Minn. Stat. § 221.151 and unreasonable rates under Minn.Stat. § 221.161 bar the motor carrier's recovery of the filed rates. These issues are collateral to the central issue of the court's equitable powers under Minn.Stat. § 221.261 and are thus not reached by this court.

## DECISION

The district court did not err when it exercised its equitable powers pursuant to Minn.Stat. § 221.261 and ruled that the motor carrier's recovery under the filed rate doctrine was barred by equitable estoppel.

**Affirmed.**